IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:11-CV-00038-FL

| | |
|---|---|
| JOSEPH C. HEDSPETH, III, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **ORDER** |

This matter is before the court on plaintiff's motion for judgment on the pleadings (DE # 15) and defendant's motion for judgment on the pleadings (DE # 22). In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court denies plaintiff's motion for judgment on the pleadings and grants defendant's motion for judgment on the pleadings.

## STATEMENT OF THE CASE

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 11, 2006, alleging disability beginning August 10, 2006. Plaintiff's claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") who determined plaintiff was not disabled during the relevant period in a decision dated May 6, 2009. The Appeals Council denied plaintiff's request for review on June 15, 2011, and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed the instant action on July 19, 2011.

# DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). This standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

B.  Analysis

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005); see also 20 C.F.R. §§ 404.1520(c), 416.920(c). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In this case, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since August 10, 2006. At step two, the ALJ determined that plaintiff suffered from the severe impairments of chronic back pain, acute knee pain, migraine headaches, and

2

fracture of right clavicle. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work with an at will sit/stand option. However, at step four, the ALJ concluded that plaintiff was unable to perform any of his past relevant work. Finally, at step five, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform.

Plaintiff contends that the ALJ's decision should be reversed because: (1) the ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating physician; (2) the ALJ erred by finding that plaintiff's anxiety was non-severe; (3) the ALJ erred by failing to obtain a function-by-function mental RFC assessment; (4) the ALJ erred by failing to tell the vocational expert ("VE") how often plaintiff needed to alternate sitting and standing; (5) the ALJ erred by failing to mention certain functional limitations in his hypothetical question to the VE; and (6) the VE's testimony did not constitute substantial evidence.

1. Opinion Evidence

Plaintiff first contends that the ALJ erred by failing to give controlling weight to the opinion of his treating physician, Dr. DeLoatch. Specifically, plaintiff suggests that the ALJ's conclusion that Dr. DeLoatch's RFC determination was "not supported by the doctor's own treatment records or other evidence as a whole" was both impermissibly general and factually incorrect. The court disagrees.

The Fourth Circuit has held that a treating physician's opinion in entitled to controlling weight *only* if it is supported by clinical and laboratory diagnostic techniques, *and* if it is not inconsistent with other evidence. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By

3

negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590). The ALJ's decision must contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ determined that the opinion of Dr. DeLoatch, which "basically indicated that the claimant was not capable of even sedentary work," was not entitled to controlling weight and, instead, afforded it "very little weight." (Tr. 22). The ALJ noted that he had given "special consideration" to the October 22, 2007 Physical RFC Questionnaire completed by Dr. DeLoatch, but that he had found Dr. DeLoatch's opinion was "not supported by the doctor's own treatment records or other evidence as a whole." Id. In addition to assessing the opinion of Dr. DeLoatch (Tr. 201-07), the ALJ also considered medical evidence from the following sources in evaluating the severity of plaintiff's impairments (Tr. 17-19): (1) visit notes from Dr. Nelson and Dr. Lee,[1] who evaluated plaintiff in January and February 2005 for his migraines (Tr. 326-31); (2) hospital records related to an August 2006 single-car motor vehicle accident in which plaintiff injured his left knee and a September 2006 fall in which plaintiff injured his right knee (Tr. 255-88, 303-16, 366-69, 384-87, 389-406); (3) a November 9, 2006 consultative examination performed by Dr. Monderewicz (Tr. 338-45); (4) records relating to an open reduction internal fixation surgery performed on plaintiff's right clavicle by Dr. Duke in June 2007 and related follow-up visits, (Tr. 137-40, 210-53, 294-302); and (5) a January 22, 2009 consultative examination performed by

---

[1] The court notes that the ALJ incorrectly referred to these records as the records of Dr. Clayton, who was actually the referring physician.

4

Dr. Cockrell (Tr. 124-36). The ALJ referred again to several of these sources in determining plaintiff's RFC (Tr. 21-22).

The bulk of these opinions support the ALJ's conclusions; for example, the court notes Dr. Cockrell's observation that "it is somewhat interesting to note that someone who has chronic and severe low back pain would be able to ride a four-wheeler across bumpy terrain" (Tr. 125) and Dr. Duke's notations that plaintiff had reported that his range of motion in his shoulder was almost back to normal and that he consistently refused x-rays of his knees (Tr. 137). The ALJ was required to consider these opinions and did not err in affording any of them more weight than that of plaintiff's treating physician where they were supported by substantial evidence in the record. See Rollinson v. Astrue, No. 7:09-CV-137-FL, 2010 WL 1737690, at *7-8 (E.D.N.C. April 9, 2010), adopted by, 2010 WL 1737644 (E.D.N.C. Apr. 29, 2010). The fact that plaintiff can point to a single piece of evidence, Dr. Monderewicz's consultative examination report, which supports Dr. DeLoatch's determination in part, is not sufficient to compel a different result.

Similarly, with regard to plaintiff's contention that the ALJ's conclusion was impermissibly general, it is clear to the court that the ALJ appropriately considered the full spectrum of medical evidence in the record in making his determination, despite the relatively brief nature of his actual conclusory sentence. In addition, the court notes that the ALJ also gave only "little weight" to the opinions of two state agency medical consultants who had found plaintiff capable of a full range of medium work at the initial and reconsideration stages, because, although reasonable at the time, they amounted to the opinions of "non-examining

medical sources who did not have the benefit of updated medical evidence and testimony at the hearing." (Tr. 22).

As a result, the court finds no merit in either plaintiff's contention that the ALJ's conclusion as to Dr. DeLoatch's opinion was impermissibly general or his contention that it was factually incorrect. Rather, the court finds that the ALJ's decision as a whole contained "specific reasons for the weight given to the treating source's medical opinion" and was "supported by the evidence in the case record," as required by SSR 96–2p. Accordingly, the ALJ did not err by failing to give controlling weight to the opinion of plaintiff's treating physician.

2. Plaintiff's Anxiety

Plaintiff next contends that the ALJ erred by finding that his anxiety was non-severe. Specifically, plaintiff suggests that both Dr. DeLoatch's opinion as to his anxiety and the hypothetical question posed to the VE by the ALJ indicate that plaintiff's anxiety was, in fact, severe. The court disagrees.

A "severe impairment" is defined as an impairment "which significantly limits [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). In other words, "[a]n impairment is 'severe' unless it 'has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" Wilson v. Astrue, No. 4:07-CV-148-FL, 2008 WL 2019650, at *5 (E.D.N.C. May 9, 2008) (quoting Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)). "As such, the 'severity standard is a slight one.'" Id. (quoting Stemple v. Astrue, 475 F. Supp. 2d 527, 536 (D. Md. 2007)). However, the fact that a plaintiff is diagnosed with a condition does not necessarily mean that a resulting impairment will be severe. See

6

Cobb-Leonard v. Astrue, No. 3:10-cv-449, 2011 WL 4498876, at *5 (W.D.N.C. Sept. 8, 2011) (recognizing that the fact of a diagnosis says nothing as to whether a condition is a "severe impairment"). In order to establish an impairment as severe, a plaintiff must not only provide evidence of the impairment, but is also required to provide evidence of how that impairment affects his or her functioning. 20 C.F.R. §§ 404.1512(c), 416.912(c).

The ALJ found that plaintiff's anxiety was "medically determinable," but that it "[did] not cause more than minimal limitation in the claimant's ability to perform basic work activities and is therefore non-severe." (Tr. 19). In addition, the ALJ noted the fact that "psychiatric treatment or counseling has not been recommended by the claimant's treating physician" and found that plaintiff had "no limitations in the functional areas of activities of daily living, social functioning, or concentration, persistence or pace; and he has not experienced any episodes of decompensation." (Tr. 19-20). In evaluating the severity of plaintiff's impairments and determining his RFC (Tr. 17-22), the ALJ considered additional evidence in the record which addressed plaintiff's anxiety: for example, Dr. Cockrell's January 22, 2009 consultative examination (Tr. 124-36).

The only support which plaintiff has cited with regard to any *limitation* caused by his anxiety appears to be his contention that "Dr. DeLoatch opined that Hedspeth's anxiety was contributing to disabling pain, and that Hedspeth could not work even in a low-stress environment," Pl.'s Mem. in Supp. of Mot. J. Pleadings at 9 (DE # 16), and his contention that the ALJ must have considered his anxiety to be a severe impairment because he noted that plaintiff was limited to simple, routine, repetitive tasks in the hypothetical posed to the VE, id. at 9-10. With regard to plaintiff's contention as to Dr. DeLoatch's opinion, as discussed in section

7

B.1, *supra*, the court finds that the ALJ did not err in giving Dr. DeLoatch's opinion "very little weight." However, even if Dr. DeLoatch's opinion had been entitled to more weight, the court nonetheless finds that plaintiff's attempted characterization of Dr. DeLoatch's opinion is not an accurate representation of the answers given in his October 22, 2007 Physical RFC Questionnaire.[2] With regard to plaintiff's contention that the ALJ must have considered his anxiety to be a severe impairment based on the hypothetical question posed to the VE, the court finds that the ALJ's inclusion of a limitation to simple, routine, repetitive tasks in the hypothetical question in no way contradicts the ALJ's finding that plaintiff's anxiety was not a severe impairment, and instead merely exhibits a desire by the ALJ to give plaintiff the benefit of the doubt in determining his RFC, as noted directly in his opinion. (Tr. 22) ("[T]he undersigned gives the claimant every benefit of the doubt and concludes that he can perform only light and sedentary work.").[3]

As a result, the court finds no merit in plaintiff's contention that either Dr. DeLoatch's opinion or the hypothetical question posed to the VE by the ALJ supports a finding that plaintiff's anxiety was a severe impairment. Rather, the court finds that plaintiff has failed to provide evidence to contradict the ALJ's conclusion that plaintiff's anxiety was not an impairment "which significantly limits [his] physical or mental ability to do basic work

---

[2] In the questionnaire, Dr. DeLoatch checked off "anxiety" in response to a question which asked him to "[i]dentify any psychological conditions affecting your patient's physical condition" and checked off "incapable of even 'low stress' jobs" in response to a question which asked him to assess "[t]o what degree can your patient tolerate work stress?" (Tr. 202). However, these responses do not in any way indicate that plaintiff's anxiety was "contributing to disabling pain" or that plaintiff's inability to work "even in a low-stress environment" had anything whatsoever to do with his anxiety, as argued by plaintiff. Furthermore, the court notes that the Commissioner correctly points out that, in the same questionnaire, Dr. DeLoatch also checked off "no" in response to a question which asked whether "emotional factors contribute[d] to the severity of your patient's symptoms and functional limitations" (Tr. 201), indicating a diametrically opposed opinion to that set forth by plaintiff.

[3] Finally, with regard to plaintiff's apparent attempt to convince the court that the ALJ somehow erred by noting that Dr. DeLoatch had not recommended psychiatric treatment or counseling because the ALJ could not have known that for a fact and, at best, could only have known that Dr. DeLoatch had not put any such recommendation in writing, the court simply notes that, in addition to being meritless, this argument is disingenuous.

8

activities," as required by 20 C.F.R. §§ 404.1520(c), 416.920(c). Accordingly, the ALJ did not err by finding that plaintiff's anxiety was non-severe.

3. Mental RFC Assessment

Plaintiff next contends that the ALJ erred by failing to obtain a function-by-function mental RFC assessment. Specifically, plaintiff suggests that, because he has a "colorable claim" of mental impairment and the record does not contain a Mental RFC Form, the Commissioner did not sufficiently assess plaintiff's mental RFC. The court disagrees.

As discussed in section B.2, *supra*, the court finds that the ALJ did not err in finding plaintiff's anxiety to be non-severe. In so finding, the court rejected plaintiff's arguments that there is evidence in the record to support his position that his anxiety is any way limiting. In addition, the court notes the existence of a state agency psychiatric review report, completed by Dr. Cooke on October 24, 2006, which acknowledged plaintiff's allegations of anxiety but concluded that it was not a severe impairment (Tr. 370, 375), found that plaintiff had no functional limitations related to his anxiety (Tr. 380), and noted the fact that plaintiff had "state[d] that the only [sic] physical impairments prevent him from working" and "state[d] [that] anxiety is controlled by meds and mental condition is non-severe" (Tr. 382).

As a result, because substantial evidence supports the ALJ's finding that plaintiff's anxiety was not limiting, the court finds that the ALJ did not err by not obtaining a function-by-function mental RFC assessment in the form of a Mental RFC Form. Similarly, even to the limited extent that plaintiff's statement that his "colorable claim" of mental impairment requires the ALJ to obtain a function-by-function mental RFC assessment is an accurate statement of the

law,[4] the court finds that plaintiff has also failed to demonstrate that he has a "colorable claim" of mental impairment. Accordingly, the ALJ did not err by failing to obtain a function-by-function mental RFC assessment.

   4. Sit/Stand Option

Plaintiff next contends that the ALJ erred by failing to tell the VE how often plaintiff needed to alternate between sitting and standing. Specifically, plaintiff suggests that, because the ALJ found that plaintiff required an "at will" sit/stand option, the ALJ was required to make the frequency of plaintiff's need to alternate sitting and standing clear to the VE in his hypothetical question. The court disagrees.

At the hearing, the ALJ asked the VE to assume a hypothetical individual who could "sit, stand and walk six hours each in an eight-hour workday, but requires a sit/stand option." (Tr. 437). In response, the VE opined that such an individual would be able to perform the jobs of cashier II, office helper, and parking lot attendant. Id. As a result, the ALJ found that plaintiff retained the RFC to "perform light work as defined in 20 CFR 404.1567(b); however, he requires a sit/stand option *at will*." (Tr. 20) (emphasis added).

The court finds that the ALJ did not err in posing a hypothetical to the VE which included only a "sit/stand option" before ultimately finding that plaintiff required a "sit/stand option at will." The case law supports such a finding. See Thompson v. Astrue, 2011 WL 3489671, at *2, 442 Fed. App'x 804, 807 (4th Cir. Aug. 10, 2011) (finding that, despite claimant's argument that the ALJ had failed to specify the frequency with which she needed to alternate sitting and standing, the ALJ's RFC finding and hypothetical were consistent with an

---

[4] Plaintiff's main statement of the applicable standard simply reads as follows: "If there exists even a colorable claim of mental impairment, the Commissioner must apply the 'special technique.' Obviously [sic], the main objective of the special technique is to make the assessment of mental impairment accurate and reliable." Pl.'s Mem. in Supp. of Mot. J. Pleadings at 10.

10

"at will" sit/stand option and that no greater specificity was required); see also, e.g., Wright v. Astrue, No. 1:09CV0003, 2012 WL 182167, at *8 (M.D.N.C. Jan. 23, 2012) (ALJ's inclusion in hypothetical of "sit/stand" option sufficient because its "at will" nature was reasonably implied); Pierpalio v. Astrue, No. 4:10–2401–CMC–TER, 2011 WL 7112913, at *6 (D.S.C. Dec. 15, 2011) ("at will" indication sufficient to satisfy requirement of frequency). Moreover, the court notes that, although plaintiff argues that SSR 96-9p supports his position, the court agrees with the Commissioner that SSR 96-9p is inapposite due to the fact that it applies only to individuals who retain the RFC for less than a full range of *sedentary* work, not, as here, light work. SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996); see also, e.g., Kestler v. Astrue, No. 2:10-cv-00220-DNF, 2011 WL 4005898, at *10-11 (M.D. Fla. Sept. 9, 2011) (finding SSR 96-9p inapplicable in context of RFC for light work).

As a result, the court finds that the ALJ did not err by indicating only plaintiff's need for a "sit/stand option" in his hypothetical question to the VE. Accordingly, the ALJ did not err by failing to tell the VE how often plaintiff needed to alternate between sitting and standing.

5. Functional Limitations in Hypothetical

Plaintiff next contends the ALJ erred by failing to mention certain functional limitations in his hypothetical question to the VE. Specifically, plaintiff suggests that, in light of the opinions of Dr. DeLoatch and Dr. Monderewicz as to plaintiff's physical limitations, the ALJ should have included restrictions on bending, stooping, crouching, etc. in his hypothetical question. The court disagrees.

11

Pursuant to the two-step credibility analysis under Craig,[5] the ALJ found that plaintiff's "statements about his impairments and their impact on his ability to work [we]re not entirely credible in light of the objective medical evidence" and that he "allege[d] greater limitations than can reasonably be supported by the objective findings concerning his condition." (Tr. 21). As a result, after considering all of the evidence in the record, the ALJ determined that despite plaintiff's complaints of further restrictions, he nonetheless retained the ability to perform light work with an at will sit/stand option. (Tr. 20). In making this determination, the ALJ singled out the following evidence: (1) that plaintiff had continued working despite his migraine headaches until his accident in August 2006; (2) that his right clavicle had fully healed; (3) that his knee and back pain was treated with pain medication only and not with physical therapy, injections, or surgeries; (4) that Dr. Cockrell opined on January 22, 2009 that "he was able to ambulate sit and lay supine and get back up without assistance; he had no spasm and normal range of motion in the back and no tenderness, erythema, or joint instability in the upper extremities; and his lower extremities appeared grossly normal with no joint instability or laxity and he had a steady gate and normal reflexes;" and (5) that his "[a]ctivities of daily living reveal that despite his allegations of limitations, he is able to drive to the store and doctors' appointments, visit friends, take care of his personal needs, and help with household chores." (Tr. 21-22).

---

[5] First, an ALJ must determine whether the claimant's medically determinable impairment(s) could reasonably cause the alleged symptoms. Craig, 76 F.3d at 594-95. Second, an ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Plaintiff attempts to point to other evidence in the record which supports his allegations of further functional limitations, namely the opinions of Dr. DeLoatch and Dr. Monderewicz.[6] However, as this court has held:

> [T]he hypothetical need not reflect all of the opinions of examiners and consulting doctors. Instead, it need only adequately reflect those opinions and medical conditions which the ALJ finds credible. . . . [T]he ALJ crafted a hypothetical that adequately reflects the plaintiff's limitations that he found credible. That is all an ALJ must do with regard to posing hypothetical questions to a VE.

Norris v. Astrue, No. 7:07-CV-184-FL, 2008 WL 4911794, at *5 (E.D.N.C. Nov. 14, 2008); see also Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). Here, the ALJ appropriately crafted a hypothetical question to the VE which included the sole functional limitation suggested by the evidence in the record which the ALJ found credible: a sit/stand option. This credibility finding was appropriately backed by specific evidence in the record, and the ALJ did not err by failing to include additional limitations which may have been suggested by sources such as Dr. DeLoatch, whose opinion the court has already found that the ALJ did not err in giving "very little weight." See section B.1, supra.

As a result, the court finds that the ALJ posed a hypothetical question to the VE which appropriately included all of plaintiff's limitations which the ALJ found to be credible. Accordingly, the ALJ did not err by failing to mention certain functional limitations in his hypothetical question to the VE.

6. VE's Testimony

Finally, plaintiff contends that the VE's testimony did not constitute substantial evidence. Specifically, plaintiff suggests that the VE's testimony contained an impermissibly high error

---

[6] The court does also note that plaintiff cites selectively to these opinions in support of this argument.

rate and that the VE's opinions were not based on actual calculations or experience. The court disagrees.

Among other things, plaintiff appears to challenge the validity of the VE's testimony as a whole in this case by arguing that the VE's suggestion of jobs for which "1 to 2,000" positions were available in the state impermissibly allowed for a 100% error rate and that the VE did not herself tally the number of jobs. The court cannot credit any such arguments particularly where, as here, no objection was made to the VE's qualifications at the time of the hearing[7] and plaintiff has cited no support for any of the VE's suggested failures by way of conflicting evidence. Other courts have reached similar conclusions. See, e.g., Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *8 (W.D.N.C. Aug. 24, 2010), adopted by 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010) (finding no merit in plaintiff's argument that VE's testimony did not constitute substantial evidence where counsel for plaintiff had stipulated to VE's status as an expert in the field, did not cross-examine or otherwise challenge the testimony concerning the number of jobs in the national economy, and there was no evidence of record that the numbers testified to were incorrect).

As a result, the court finds that the ALJ properly relied on the VE's testimony in concluding that there were jobs available in significant numbers in the national economy which plaintiff could perform. Accordingly, plaintiff's argument that the VE's testimony did not constitute substantial evidence is rejected.

---

[7] While the court recognizes that plaintiff was represented by different counsel at the time of the hearing, that counsel did not object to the VE testifying as an expert. (Tr. 436).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (DE # 15) is DENIED and defendant's motion for judgment on the pleadings (DE # 22) is GRANTED. The clerk is directed to close the case.

SO ORDERED, this the 11th day of September, 2012.

LOUISE W. FLANAGAN
United States District Judge

15